Judge Robertson,
delivered the opinion of the Court.
In July, 1796, William Connet was married to Sally Carrol,, a daughter of Demsy Carrol,.
*196 In October, 1796, William Connet died intestate, in Mason county, in this state, where he had settled with his wife, about twro months before his death. He left his widow pregnant, with the defendant, William C. Connet, who was born about eight months after his father’s death.
The widow was qualified as the administratrix of her deceased husband, and had his goods' and chattels appraised. The appraisement, without the signature of the administratrix, was returned to the Mason county court; a copy of which, certified by the clerk of that court, is exhibited in this case, as the principal evidence of the amount of the decedent’s estate. From which it appears, that the estate consisted of a female slave, (Chloe) and her infant son, Peter, about five years old at the date of the appraisement, in 1796, of seventy barrels of corn, some few articles of household furniture, and the clothes, and spurs, and sleeve buttons of the intestate. At his death, William Connet, was also in possession of a female slave, (Malinda) which had been brought into his family from his father-in-law, by his wife. But as D. Carrol, the father o.f Mrs. Connet, claimed this girl as his property, and took her into possession immediately after W. Connet’s death, she was not appraised. And as there is evidence in the record? tending to prove that Malinda was not the property of W. Connet, and showing clearly, that she died in a few month’s after his death, she will not be further noticed in this opinion. These facts in relation to her, have been suggested, only to show the reason why, in deciding on the claims of the defendant, she will not be considered.
On the day of W. Connet’s burial, the widow was removed to her father’s, whither she carried the slaves, Chloe and Peter, and where she and her son, (the defendant in error) after his birth, lived until 1804, when she was married to James Blinco.
Shortly after her last marriage, she left her father’s house, carrying with her, her son, who lived with her and Blinco, in Mason county, until 1809, when they removed to Hapdin county, whither he went with them, and where he lived with them, generally, until 1814, when his mother died.
*197 During the interval which elapsed from the death of W. Connet, to that of his widow, Chloe had borne four children, to-wit: Alfred, born in 1797; Cate ’99; Jordan, in 1802, and Joe, in 1806, all of whom were living and in Blinco’s possession at the death of his wife. During the life of the administratrix, some of the slaves were occasionally hired out.
No inventory was ever made to the county court, nor was there ever any assignment of dower, or settlement of the administration, or distribution of the estate.
Nor does it appear that any guardian was appointed for W. C. Connet, until after his mother’s death, when in 1816, Benjamin Bean being appointed guardian, made application to Blinco for the slaves, who, aboiit ten months after his wife’s death, surrendered them all. W. C. Connet, until 1815, seerns to have been under the control and tutelage of his mother, and natural guardian, and of Blinco, who acted towards him, in loco parentis. During most of this lime, W. C, Connet,performed services and labor asoné of the family, and was, occasionally, sent to school.
On the 12th of July, 18?4, this suit in chancery was brought for distribution of the personal estate, and for the hire of the slaves.
Alleging the death ”of Demsy Carrol, and that no administration had been granted on Mrs. Blinco’s estate, the bill is filed against Joseph Carrol, one of the executors of D. Carrol, and against Jane Carrol, administratrix with the will annexed, of Sandford Carrol, who was executor of Lawson Carrol, another executor of Demsy Carrol, and who was also one of the securities for the executors of D. Carl-ol, and against Surge Curtis and Henry Small, two other securities for said executors, and also against Daniel Lee, William Porter and Jeremiah Martin, securities for the administratrix, Jane Carrol. Añ amended bill suggests Small’s death, and makes his administrators, William Reid and Elisha Cogwell, defendants.
Some of the defendants answered, and resisted the right of the complainant to any decree against them, on three grounds. 1st. That they were not liable. 2d. That the proper parties were not made. 3d. *198 That the complainant had received as much as he was entitled to.
Bill in ohan-eery,the appropriate remedy against adm’x. and securities, to obtain distributive share, and securities may be sued alone, if adm’x. dead, and unrepresented.
Against others of the defendants, who did not answer, the bill was taken for confessed.
On the final hearing, in 1827, the circuit court decreed in favor of the complainant below, defendant here, $1317 90 1-2 cents, against the defendants below, plaintiffs here, jointly, and to be levied, dt bonis propriis.
This aggregate is compounded of three items. 1st. The amount of the inventory, after deducting the value of the slaves. 2d. The value of the use of the slaves, from W. Connet’s death until ten months, after Mrs. Blinco’s death. 3d. The labor of W. C. Connet, whilst living in the family of his mother. On all of which interest is charged by the decree,, from 181 b, when the slaves were surrendered to the guardian. Compensation to the administratrix is set off against the interest accruing before 1815, and no Mrefunding bond” i's required,
The plaintiffs assign various errors to this decree. We shall not notice them in regular order. But they will all be embraced in the scope of the opinion, which we are about to give. We shall first notice the principles of the decree, and next its minuter details.
Under the first head, the first and most radical objection which is presented, by the plaintiffs is, that they are not liable in this suit, to any decree in favor of the defendant in error. This objection is untenable. No authorities need be cited to show that a suit in chancery is an appropriate remedy by a distributee against the administratrix and her securities. They may be sued alone, when she is dead, and is unrepresented, as in this case. Graves et al. vs. Downey et al. III. Monroe, 354; Spotswood vs. Dandridge, IV. Munford, 296; Taliferro and Gaines vs. Thornton et ux.-Call,-Coxe’s heirs vs. Strode, II. Bibb, 276.
These authorities establish the still more extensive principle, that “a court of equity may, at the suit of *199 a legatee (and of course a distributee) and without any previous suit having been brought against the executor (or administrator) to convict him of a devas-tavit, convene the securities or their representatives, and make the securities liable for any misapplication or wasting of the assets which shall be established in the suit above mentioned.”
If adm’x. marry, she cannot act without husband’s concurrence, and his estate is chargeable, in equity, for any waste committed, & her securities continue liable, for all acts done during cover-ture.
Omission, in adm’rs. bona, of the stipulation usually inserted for benefit of creditors, will not protect securities, from suit by distributees.
*199 To refuse such a remedy in chancery, would amount to a denial of justice. It would virtually be acknowledging a right and withholding the remedy.
The fact that most, if not all of the claims of the defendant, which are sought to be enforced in this suit, occurred during the coverture of the administra-trix, when the husband, Blinco, had the legal control of the administration, and enjoyed the profits of the slaves, does not present any decisive objection to a decree against the plaintiffs in error.
For the use and hire of the slaves during the marriage, Blinco is certainly responsible* If an adminis-tratrix marry, her official acts, without the husbands concurrence, are void. III. Bac. Abr. 9; Roll. Abr. 924. The husband has a right to act in the administration without her co-operation or consent. Toller on Ex’rs. 241-358, and consequently his assets are chargeable in equity, for any waste committed during coverture. Toller, 358; III. Monroe, 355.
But the same authorities as well as that of reason, prove, that the securities of the administratrix are also responsible to creditors and distributees, any other doctrine would be palpably unreasonable and unjust. The control of the baron over the administration, confided to the feme, when sole, results from the marital relation. It is a necessary consequence of legal unity and identity of husband and wife. In such case the husband has given no security. His acts are those of the administratrix, “qui fácil per alium, facit per sef The securities for the adminis-tratrix are bound for her acts as administratrix, and consequently for all those of her husband, who has the right to act for her, and whose acts, in that capacity are her’s.
The next objection made to the principle of the decree, is, that the administration bond, imposes on *200 the securities, no liability to the distributee. The condition is, that the administratrix, shall make and return to the county court of Mason, whenever required, a true and perfect inventory of the estate of W. Ccinnet, “anti the rest and residue of the said goods and chattels, which shall be found remaining upon the said administratrix’s account, the same being first examined, and allowed by the justices of the said court, for the time being, shall deliver, and pay unto such person or persons respectively, as the said justices by their order, shall direct, pursuant to Jaw.” The usual stipulation for the benefit and security of creditors, and which should precede the last, in the condition of this bond, is entirely omitted; that is, that the administratrix shall well and truly administer, &c.
It is for this reason, that the counsel for the plaintiffs insist, that the bond is unintelligible, and consequently, inoperative. In this- criticism, this court cannot concur^
We have no doubt, that the omission could exempt the security from liability to creditors, of the intestate, because it has been frequently determined by this court, that the omittted stipulation is intended, and is the only one intended, for the security of creditors. It is equally undeniable, that a security cannot be held liable, contrary to, or beyond the condition of his bond; Barbor and Chapline vs. Robertson’s heirs, I. Littell’s Repts. 93. Balyell vs. Hall’s heirs, Ib. 97.
The bonds in these cases, omitted the stipulation for distribution; and therefore,it was decided that these-curities were not liable fora failure,by the principals, to make distribution's they had not undertaken, that distribution should be made. But here the securities have become expressly bound for distribution of the surplus. The precedent engagement, for a faithful and true administration, which means a payment of all debts, which must be made, before the residue for distribution can be ascertained, renders the phraseology of the condition,awkward, but not unintelligible and invalid. Its import is clear and indisputable; and its legal construction, and effect, are the same, that they would be, if the proper basis had *201 been laid by express stipulation, for ascertaining surplus for appropriation to the distributee.
Adm’r. is lia, ble for failure to distribute slaves. So far as rights and duties of administration, are concerned., slaves are chattels.
“All the rest and residue,” means what remains Tor distribution, according to law, that is* what is left after payment of debts. It means this or nothing. If it could be construed to mean an undertaking, to distribute the whole estate, without paying debts, the obligation to distribute, what might remain aftera payment of debts, would surely not be diminished, and the obligors could not object, that they are required to do less, than the verbal import of their bond might exact from them. If this construction could be given to the bond, it would surely not render it imperative. But we are satisfied with the construction, which we think the rules of law, will put upon it; that is, that all shall be distributed, which shall remain in the hands of the administratrix, after she shall have done, what the law, and the nature of her office, require her to do, before distribution; that is, paid the just demands of all bona fide creditors.
We are therefore of opinion, that the security for the administratrix, was liable to the distributee.
And that liability extends to the slaves, and their hire, or the valúe of their use. Although, for some purposes, slaves are declared by statute, to be real estate, they are nevertheless intrinsically personal, and therefore, to be considered as included in every statute or contract, in relation to chattels, which does not in terms exclude them. They are liable as chattels, to the payment of debts. They may be attached, as chattels, and they have been invariably treated as chattels, in both Virginia and Kentucky, so far as the rights or duties of Administration are concerned. I. Littell’s Reports, 99..
And, consequently, the security is responsible for the profits of slaves before distribution, Redwood vs. Riddick and wife. IV. Munford, 222. Littell’s Sel. Ca. Webb vs. Conn, &c. 475, and Graves et. al. vs. Downey, et. al. III. Mon. 354.
But an objection to the decree in this case, now occurs, which is more formidable, than those which *202 have been noticed. It is to the allowance of interest on the principal fund for distribution.
Guardians are generally responsible _for interest & ' profits.
Adtn’r. is not, generally, responsible for interest, unless it be shewn, by proof, that he made interest If he refuse to distribute, on proper application, he shall pay interest from that time.
Guardians are liable for interest, because, their trusts confide the estates of their wards to them, to be kept safely, and made profitable. ^And they will generally be' responsible for interest and profits. They might even be held responsible for compound interest, for, by complying with the requisition of the law, and settling their accounts annually, accruing interest, exceeding necessary disbursements, would be incorporated in many instances, if not always, into the aggregate fund of the principal'estate',- and susceptible of yielding interest or annual profit.
But this is not the case with an administrator. It is no part of his duty, to make profit out of a distributable fund in his hands. He is bound to hold it ready for all legal draughts upon it.- It is liable continually to the cabs of creditors; and, after one year, is perpetually liable to the demand of distributees, or their' guardians. The administrator cannot know, at what moment he may be called on to appropriate or surrender it; and therefore, he is presumed, in the absence of proof to the contrary, to have it always in hand, as generally he would do, and ought to do, if he would consult prudential considerations alone. Whether he shall account to the distributees for interest, must depend chiefly on the circumstances of each particular case. As he is a trustee, if he make interest or profit, it is an accession to the principal fund* and he should therefore account for it. But, unless he shall have received profits, he is not accountable for them, unless, under the peculiar circumstances of the case, his failure to make them, is evidence of so much negligence, as to evince bad faith, or fraud.Generally, therefore, he is not responsible for interest,unless he shall be shewn by proof, to have made interest, until after he shall have failed, on a sufficient demand, to make distribution. He shall always account for interest accruing, after his refusal, on proper application, to distribute. The authorities on this subject, are not all in perfect concord. It could not be expected, that there would be no apparent collision among them, in the application of a principle, *203 so liable lo the influence of various circumstances. But the foregoing are believed to be the most preva--lent, and approved rules deduceable from the reported cases, and from the reason of all cases.
Ex’r. spiling slave, when sale is not directed by will nor necessary for payment of debt-, is responsible to distributees, tor value of slave and reasonable hire.
Neither ex’r. or adm’r is bmind to distribute, till refunding bond is tendered. Therefore, application for ilis-r tribution, without tender <f refunding bond, will not e,harae adra’r with interest.
Adm’r. is not obliged io loan, out the estate.
Any trustee is chargeable in equity with interest, if he has made interest
An executor, who sells a slave, when the sale is not directed by the will, nor is necessary for payment of debts, is responsible to the distributees for the value of the slave, and for reasonable hire. Henning vs. Conner’s administrators; II. Bibb. 188. An executor is not chargeable with interest on a legacy, payable to an infant, before a guardian has b ten appointed, and he has received notice of such appointment.” Cavendish vs. Fleming; III. Munford, 198.
Neither an executor, nor an administrator, can be required to make distribution, before “a refunding bond” be given, as required by act of assembly. Stovall’s executor, vs. Woodson, et ux. II. Munford, 303. III. ib. Shephard’s executor, vs. Stark, et ux. 29. Prewit’s executor vs. Prewit’s heirs, IV. Bibb. 266. Litt. Sel. Ca. 478.
As the administrator is not bound to make distribution, until a bond of indemnity be offered, consequently, if he has not made interest, “it follows, as a necessary consequence, that the failure to pay before the bond and security are tendered, cannot subject the administra for to the charge of interest.” Webb vs. Conn, et al. Litt. Sel. Ca. 478. Quinn vs. Stockton, II. Litt. Rep. 346.
“An administrator is under no obligations, to lend the estate in his hands.” Same case in Sel. Ca.
Any trustee is chargeable in equity, with interest, when he shall have made interest. II. Fonblanque, 184; Toller, 481-2; X. Mod. 21; I. Virn. 196; M'Call vs. Peachy’s administrator; III. Munford, 288; Cavendish vs. Fleming, Ib. 198.
Such are some of the authorities, on this subject. Cases may occur, in which the reason of these authorities would not be applicable; and consequently, in such, the rule of equity would be different. It is not necessary now, to attempt an enumeration, or even a clasification of these exceptions. It is sufficient for this case, that it is not one of them.
Adm’x. not bound to sell intestate’s wearing apparel, nor to, account for it to distribu-tee, unless she has converted it to some improper or mercenary and.
Here,if W. C. Connet had had a guardian, it is evident that the administratrix would not have been liable for interest, until a demand and tender of sufficient bond', by the guardian, except so far as it might be proved, that she had received interest. As there was rio guardian during her life, the reason is much stronger, why she should not be held accountable for interest; because, there was no person to whom she could have made a payment for the minor, without liability to pay again. The slaves were not often hired out, and there is no proof that the proceeds of any of the hiring, except of two, were ever put out at interest; and it is not proved, that they were at interest more than one year.
Forthe use of the slaves, by the administratrix and her husband, interest could not have been received; and therefore, on this amount there should be no decree for interest, until after a demand by the guardian. No demand is either alleged or proved; and therefore it is admitted, as the deduction o.f law, that none was ever made. The slaves were not demanded. But they were surrendered. There was no demand for any thing else, nor was there any offer to give “a refunding bond.”
The court, therefore, erred in decreeing inter-; est. Such are the errors in the principles of the decree. Theye are many errors in the ‘details, The court erred in the extent of its decree, for prim cipal, in the following particulars.
1st. It has charged-the administratrix with the val, ueof the intestate’s wearing apparel. Whether these were chattels, which were liable to thp payment of debts, it is not now necessary to decide. Nor, is it material to determine, whether it was the dutv of the administratrix to include them in the appraisement, It is certainly unusual to do so. She was not bound to sell th.em,. A public sale of the wedding coat; of the hat; of the boots; of the shirts of the deceased husband and farther, would surely have shocked the feelings of the bereaved widow, and her orphan child. Such relics are generally kept as sacred memorials of him, whom, in the vigor of life, they adorned. As ipe-ipentoB of him, who was once dear to the wife who sur *205 vives, and the tender rememberanoe of whom, she delights ever to cherish; these keepsakes possess a value, far exceeding their intrinsic worth or vendable price. Necessary apparel are not subject to execution, for the demands of creditors. III. Coke, 12. II. Tidd’s. Pra. 917.
Adm’r. isen-titled to reap°ñsatioiiOIfor trouble and expenses of ^dmimstra-
If adm’x. siomsheis no* liable for ,u^ h're’ wire oV might have been worth, she'was^not bound to hire them out.
*205 In this case, they were not sold. Their sale was not necessary for payment of debts. It would, therefore, have been improper and unnatural. There is no proof that the administratrix, used or converted them to any improper, or mercenary end. It is proved that the defendant in error, as he grew up, wore some of them. Is it then, right that he should exact from the representatives of his mother’s security, as he has attempted to do, and with the sanction of the circuit judge, the appraised value of his father’s clothes, and interest upon it, when some of them were worn out, in covering his nakedness; the remainder, no doubt, destroyed by time, and none of them were ever sold or converted by the administratrix? Such a proposition is answered as soon as stated. It is negatived by the head and heart of every rational and good man, and is denounced by express authority. See M’Call vs. Peachy’s administrator, III. Munford, 289.
2d. Asthedowerofthe widow had never been assigned, the circuit court, therefore, acted correctly in de ducting from the gross amount of the estate, one third of the value of the chatties, and of the use of the slaves. But it erred in authorizing an allowance for the services of the administratrix. The commissioners set off the interest, which they charged against compensation to the administratrix. As she was not accountable for interest, there is nothing to set off, and therefore, there should be allowed a reasonable compensation for her trouble and expenses.
3d. Itisour opinion,that toohighanestimateispla-ced by the decree, on the hire of the slaves. It is higher than the weight of the testimony, in the record will justify; and in making the estimate, the witnesses should be governed by their opinion of the real value of thp use of the slaves, whilst the admin-jstratrix retained them, and not by what they sup *206 pose others might have given for their hire. What profit did she derive, or could she have derived from use? This is the question. She, and her son, the now defendant in error, lived together. She was n°t bound ^re ou<: the slaves- Sometimes, owing to their condition, and indivisibility, it would have been not only inconvenient, but perhaps improper to do so. Situated as the family was, the administratrix ought to be charged only with two-thirds of the available value, to her family, of the services of the slaves. Some of them sometimes were pregnant; and sometimes encumbered with sucking children; and none of them belonged, exclusively to her or the son. It was, therefore, not just to charge the administratrix with what the slaves might have been hired for, supposing them, free from encumbrance or impediment.
if any chattels remain in specie, at administrator’s death, dis-tributees can-net recover them from securities of adm’rs: they belong to the adm’r. de bonis non.
4th. The court certainly erred in decreeing against the plaintiffs in error, compensation for the use of the slaves, by Blinco, after the death of the administratrix. Bli'nco alone, is responsible for this. The security for the administratrix, is liable for nothing except what is done or omitted, during the administration. He is security for her faithful conduct, whilst she acts as administratrix, and no longer. He is not bound for the acts of another, after her death.
For this reason, and because he is liable for the administration, whilst he was the husband of the admin-istratrix, Blinco was a necessary party to this suit. The plaintiffs in error, have a right t.o demand, that he be made a party. If he be able to indemnify the defendant in error, he ought to do so, to the extent of his liability, and release the representatives of the security.
If any of the chattels of the intestate, remained in kind, in the possession of the administratrix, or of Blinco, at her death, the plaintiffs are not responsible for them, to the defendant; they would be goods unadministered; and the distributee would not be entitled to them in specie. They would belong to an administrator, “de boms non,” whom it would be necessary to appoint, before they could be recovered by suit, and who alone could sue for them. III. Monroe 355.
Securities of adm’x., the’ sued alone, by distributee, may require refunding bond.
*207 5th. We cannot approve the decree for eempensation to the defendant, for services and labor, performed for Blinco. It would seem signally unjust, to pel the security of the administratrix, to pay for such a charge as this. The bond does not bind him for more than the assets. Waiving the question, whether the mother would have been liable for such demand, if it be just that it should be paid by any person, it seems to the court very clear, that the defendant cannot exact, for his services, more than his support during the performance of them. He lived in the family as one of them. Being a minor, he was under the control of his mother, until another was appointed his gaurdian. It could never have been expected,-by either her or Blinco, that he would be entitled to pay for his services, as a hireling.
It is not probable that they would have accepted his occasional labor, if they had supposed that he occupied the relation of a hired servant. He might, and perhaps would have been bound out, to learn some trade, or occupation, if a guardian had been appointed by the county court, to take charge of him. He then would have been allowed no wages for, his annual and unremitted service.
Whenever his services, however, were equivalent to his boarding, education and clothing, it would be equitable to set them off, the one item against the other. And when the services were worth something, but not as much as his hoarding, &c. the amount of the charges for these latter items should be thereby diminished, “pro tanto.” For the question would be, what would it be worth to board, cloth and educate such a boy, living in the family, and performing service as he did? When his services were worth nothing, he should be charged with the value of his board, clothes, &c. When they became of any value he should be credited with that value, if less than the annual charge against him, or if only equal to it, but never for more.
6th. Although the plaintiffs in error can never be made responsible for the debts of William Connet, because the official bond does not bind Demsy Car-rol, for debts, yet, as the administratrix, if she were *208 alive, and a party, could require a refunding bond; and as the plaintiffs might not be able to recover from her representative, if there ever be one, any indemnity for any thing which may be decreed against them$ in favor of the defendants, until such a bond be executed, it would, therefore, seem right to exact of the defendant, a bond to the plaintiffs, to refund (if it shall ever become necessary, for payment of debts) to them intrust for the personal representative of the administratrix.
^alnsTadm’r and seonri- ' ties, at suit of shoulfnf^'e bonL1 propttis.
7th. There is one other error in the decree, which will be noticed; and that is, that the decree is against all the defendants below, plaintiffs here, as in their own right. It should have been rendered against them, (if proper to render it at all,) in their representative characters, to be levied, “de bonis testatoris.”
A decree against the administratrix and her secu-favor °f the distributee, might have been, ude bonis propriis,” because the debt is not one due from the intestate, which must be made out of his estate; hut is the individual debt of the administratrix, incur-re(* hy the receipt and appropriation of the estate.
But a decree against the representatives of Demsy Carrol, is for his debt or a debt for which he was security; and, therefore, should be rendered “de bonis testator is. ” For his debts or liabilities, his representatives are not responsible, farther than the amount of assets. From any greater liability,, their securities are exempted, by the 33d section of the act of 1797. I. Digest, 529; and the like exemption is secured to the principals, by the act of 1811, Ib. 535.
A devastavit cannot be fixed by one suit; there must be a judgment or decree, and a return.of “nulla bona,” before a suit for devastavit can be brought, and the act of 1811, which gives this security to personal representatives, applies, as well to suits in chancery as to those at law. The expression in the act is “any suit or action whatever.” The object of the act embraces suits in chancery, so does its letter.
According to the construction of this act, established by the repeated decisions of this court, no pleading or insufficient pleas or even confession of *209 assets, will justify a judgment or decree, ude honis jpropriis,” in the first suit against a personal representative, fór a debt of the decedent, whom he sents; Wherefore* it is manifest that the decree, in this case, is erroneous.
We have supposed, however, that the act oif 1811;, applied only to debts or liabilities of the testator or intestate, and that, therefore, to the extent of the ascertained fund for distribution, the personal' representative would be liable,.personally, in the first Instance, in equity* to the distributees-. And this has been the decision of the high courts of chancery, in Virginia; which, although not áuthórity, is very strong argument, in the absence of any more authoritative decision. See Barr vs. Barr’s administrator, II. H. and M. 26. But, however this may be, the plaintiffs in érror have not yet been shown to be personally liable.
Two other objections have been made to the decree-, which cannot be sustained; They are: 1st. That some of the defendants are not proper and necessary parties. 2d. That the appraisement bill, which was the only evidence of the whole amount of estate which came to thé hands Of the administratrix, was incompetent testimony.
Demsy Carrol, as security, was liable in his own right, therefore, Joseph Carrol, and Lawson Carrol* his executors and their securities, were liable to the extent of assets; consequently, Sanford Carrol, as one of their securities, and as executor of Lawson Car-rol, was liable; and of course his executrix, or (which is the same thing,) his administratrix, with the will annexed, is liable as far as he was liable, and as far as assets came to her hands, and to the same extent, her securities are also responsible.
An administrator of an administrator, is not the representative of the first intestate; but an executor of an executor, is executor of the first testator; Hence no valid objection to the parties is perceived* except the defect of parties, which has been noticed in another part of this opinion.
Appraisement returned to & approved of by court, although not signed by adm’r. is •prima fade evidence of , amount of estate.
Allan and Simpson, for plaintiffs; Hanson, for defendant.
An appraisement bill returned to and approved by the proper court, although not signed by the personal representative, is prima facie evidence of the amount of the estate, Rogers’s administratrix vs. Chandler’s administratrix; II. H. and M. 65.
Having examined and disposed of all the objections to the decree, and ascertained that there are errors in its principles as well as in its details, it is, therefore, decreed and ordered, that the decree of the circuit court be reversed, and the cause remanded, with instructions to dismiss the bill, unless, in a reasonable time, the proper parties be made, and, if they shall be brought before the court, then to ascertain, according to the principles of this decree, whether the complainant below be entitled to any thing, and if any thing, how much, and thereupon render such final decree as may be consistent with this opinion, and as will do equal justice among all the parties, holding Blinco first responsible to the extent of his just liability; and then, if necessary, Joseph Carrol, the surviving executor, of Demsy Carrol; and lastly, his securities, and their representatives. '